# EXHIBIT 2

SUPERIOR COURT OF THE STATE OF CALIFORNIA
IN AND FOR THE COUNTY OF VENTURA

COURTROOM 33

The People of the State of California ) No. CR 24985
)
vs. )
) REPORT OF PROBATION OFFICER
MICHAEL SCOTT JONES )
Defendant ) Hearing Date: Dec. 11, 1989
) 9:00 a.m.

LEGAL STATUS

Original Charge(s): 187(a) PC w/use of firearm alleg 12022.5(a) PC

Convicted of: 187(a) PC (2nd deg) w/use of firearm alleg 12022.5(a) PC

Date of Offense: 5-20-89

Guilty by: Jury          Date: 11-13-89     Judge: Storch

Time in Jail: 206 ds AT (see Time In Custody section/worksheet)

Bail: $250,000 (not posted)     O.R.: N/A

Negotiated Plea: N/A

Codefendants: None                Disposition: N/A

Attorney: Public Defender

Probation Officer: Elizabeth A. Krene; Ext. 5122

## PERSONAL DATA

It should be noted that the defendant refused to complete the probation forms or to be interviewed. The following information was gathered from CII, DMV, FBI, Ventura Sheriff's Office, and Corrections Services Agency records:

<u>Legal Name</u>: Michael Scott Jones             <u>AKA</u>: None known

<u>Address</u>: In custody at Ventura County Jail. Was evicted from 128 Burbank Street, Oxnard.

<u>Phone</u>: None

<u>Age</u>: 26    <u>Date and Birthplace</u>: 6-7-63; San Bernardino, CA

<u>Race/Ethnic Origin</u>: Caucasian             <u>Citizenship</u>: U.S.A.
                                                      (Country)

<u>Date Arrived in County</u>: Unk        <u>State</u>: Unk     <u>U.S.</u>: Unk

<u>Sex</u>: M    <u>Height</u>: 5'10"    <u>Weight</u>: 140    <u>Hair</u>: Blnd    <u>Eyes</u>: Blue

<u>Driver's License No</u>: U0151056              <u>SS No</u>: 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

<u>Education</u>: Unk

<u>Military Service</u>: Unk                      <u>Dates</u>: Unk

<u>Type of Discharge</u>: Unk

<u>Health/Handicaps</u>: Unk

<u>Alcohol/Drug Use</u>: Alcohol: The defendant first consumed alcohol at age 15, when he drank two to three beers twice per month. At age 18, his usage increased, and at age 21, he typically drank two to three six-packs per week, and a "six-pack at a time" on weekends. He abstained from alcohol for six months in 1984 following a driving under the influence conviction. At the time of his arrest, his average consumption varied from two to three beers per day to drinking "as much as I could." He stated "I guess I'm an alcoholic," and added "but I can quit any time."/Drugs: He refused to discuss substance abuse.

## FAMILY INFORMATION

<u>Father's Name</u>: Stanley Jones                <u>Occupation</u>: Unk

<u>Address</u>: 255 Portofino Court, Redondo Beach, CA

<u>Mother's Name</u>: Unk                         <u>Occupation</u>: Unk

FILED
DATE: 8-7-89
RICHARD D. DEAN, County Clerk
by Deputy County Clerk

IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA
IN AND FOR THE COUNTY OF VENTURA

Department/Division 33

| | |
|---|---|
| The People of the State of California ) | No. CR 24985 |
| ) | |
| vs. ) | HONOR RELEASE REPORT OF |
| ) | PROBATION OFFICER |
| MICHAEL SCOTT JONES ) | |
| Defendant ) | Hearing Date: Aug. 7, 1989 |
| ) | 9:00 a.m. |

<u>True Name</u>: Michael Scott Jones

<u>Address</u>: Ventura County Jail

<u>Age</u>: 26    <u>Date and Birthplace</u>: 6-7-63/San Bernardino, CA

<u>Charge</u>: 187(a) PC, w/ special allegation pursuant to 12022(d) PC

<u>Arrest Date</u>: 5-20-89        <u>Department</u>: CHP

<u>Attorney</u>: DPD Quinn

A preliminary investigation concerning the defendant herein named above has been conducted and the following report is submitted:

<u>X</u>    Lives without community ties. For two years, resided at 128 Burbank Street, Oxnard, but has been evicted. Has no local relatives or local address to reside at if released.

<u>X</u>    Currently unemployed. Was employed by Conejo Valley Framing in Oxnard for five years and is hopeful he would still have employment there. Owner, Mike Christensen, verified that he worked there "off and on" and was unsure about future employment.

<u>X</u>    Has lived within county for 12 years.

<u>X</u>    Has minimal record of offenses. See attached California DMV and CII.

   __X__   Unstable or emotionally disturbed personality. The defendant stated he began drinking two or three beers twice a month at age 15, and his consumption increased at age 18, and again at age 21 when he started going to bars. He drank a six pack at a time on weekends and two or three times during the week. After his arrest for driving under the influence in 1984, he stayed sober for six months but then began drinking again. His consumption varied from two or three beers a day to drinking "as much as I could," for example a 12 pack at a time. When asked, he stated, "I guess I'm an alcoholic. My whole family is alcoholic. But I can quit any time. It's a hereditary disease." He would not discuss drug use. It would appear by his reported .26% blood alcohol level and testing positive for cocaine at the time of his present arrest, that he is at risk for substance abuse.

According to Ventura County Sheriff's arrest report #89-36655, on May 20, 1989, at approximately 4:00 a.m., the defendant allegedly shot his roommate, Tom Day, age 32, five times with a .38 caliber revolver. He fled the scene but was arrested nearby and was in possession of the gun. The victim died shortly after being transported to a hospital. According to witnesses, the defendant had been drinking at the Whale's Tail restaurant in Oxnard. While being driven home by a neighbor, he took a handgun out of his pocket and displayed it to the driver, describing it as "protection." They went to the neighbor's residence where they joined others and "partied" until a resident complained. The group then went to the defendant's residence to play cards. Witnesses noticed the defendant was becoming "increasingly loud, foul mouthed, and belligerent." The victim woke up and told the defendant to be quiet. The group left and shortly thereafter, another roommate at 128 Burbank Street heard gun shots and called the police. A witness gave police the defendant's description after seeing him flee the scene with the gun in his hand. After being arrested and while being transported, the defendant made several spontaneous incriminating statements, including inquiring whether or not the victim was dead.

Considering that the defendant has no local ties or residence, his attempt to flee the scene, the comments made during the arrest process, and the seriousness of the consequences he faces, he is not a suitable candidate for an own recognizance release. There appears to be no reason to reduce bail.

Based on our investigation, an honor release is not recommended. It is respectfully recommended that bail remain as set at $500,000.

```
                                        Respectfully submitted,


                                        /s/ Carla Laubacher
                                        _____
                                        Carla Laubacher
                                        Deputy Probation Officer

Date: August 3, 1989

CL:mb43
```

-3-

Address: Unk

Stepparent: Unk                                    Occupation: Unk

Address: Unk

No. of Brothers: Unk    Sisters: Unk        Ages: Unk

Present/Former Spouse: Unk

Address: Unk

### DEFENDANT'S CHILDREN

| Name | Age | Custody | Supported By |
|------|-----|---------|--------------|
| Unk  |     |         |              |

### EMPLOYMENT RECORD

| From | To | Employer | Type of Work | Salary |
|------|-----|----------|--------------|--------|
| 1984 | 1989 | Conejo Valley Framing | Framer | Unk |

(Verified; the defendant worked off and on during that time period.)

No further employment history information was available.

### CRIMINAL HISTORY

Present Arresting Agency: Ventura SO                    Date: 5-20-89

BI No: 155418          CII No: A09103577      FBI No: 619630KA2

The following information was obtained from a search of CII, FBI, DMV, and Ventura Superior and Municipal Court records:

| Date | Agency | Charge | Disposition |
|------|--------|--------|-------------|
| 6-20-84 | Ventura SO | 23152(a) VC DUI | 563111-1. 8-8-84: PG 23152(a) VC, 36 mos CS, 48 hrs jl, $750 fn, AIS-II. |

The defendant was traveling northbound on Highway 101 at approximately 2:30 a.m. on a motorcycle. As he exited the freeway at Carmen Drive, he was unable to negotiate an S-turn due to excessive speed. His motorcycle jumped the curb and struck a turn warning sign, coming to a stop 75 feet from the off-ramp. He was found by officers walking several feet from the accident. He

-3-

appeared intoxicated and failed field sobriety tests. His blood alcohol level was found to be .21 percent.

3-13-86    Ventura SO    647(f) PC    Drunk in pub    Rel per 849b PC.

The defendant was arrested for being drunk in public. He was observed to have blood shot eyes and slurred speech. He was held in custody until he was sober and then released.

5-20-89    Ventura SO    187 PC            CR24985. 11-13-89: FG
                                           187(a) PC, 2nd deg,
                                           P&S set for 12-11-89.
                                           PRESENT MATTER

CIRCUMSTANCES OF OFFENSE:

The following information was obtained from Ventura Sheriff's Office report number 89-36655, a transcript of the preliminary hearing held on July 13, 1989 and conversations held with Deputy District Attorney Richard Holmes and Deputy Public Defender Neil Quinn.

On May 19, 1989, at approximately 8:00 p.m., the defendant mixed himself a drink at his residence and told his housemate, Alex Morrissey (age 40), he was going to a bar. The defendant's residence, 128 Burbank Avenue, Oxnard, was leased by the victim, Thomas Day (age 33). The defendant rented a room from the victim and had lived there approximately two years. Morrissey had been renting the third bedroom for approximately two weeks prior to the offense.

The defendant was seen by a friend of his, John Rogers, at the Whale's Tail Restaurant at approximately 2:00 a.m. on May 20, 1989. The defendant appeared intoxicated and asked Rogers for a ride home. En route to the defendant's residence, the defendant took a handgun out of his front pants pocket and showed it to Rogers,

-4-

telling him it was "for protection." The defendant told Rogers not to mention the gun to anyone.

When Rogers and the defendant arrived at 128 Burbank, they met Tracy Smith, a friend of Rogers', who recognized him and invited him to their residence across the street, at 129 Burbank Avenue, to play cards. The defendant and Rogers went across the street and joined a group of five other people inside. There they "partied" and played cards until approximately 3:00 a.m. The defendant's mood was described by witnesses to be alternately despondent, aggressive, angry, and morose. He became progressively more intoxicated. All parties denied the use of drugs. At approximately 3:00 a.m., a roommate woke up and complained of noise, and the defendant and six of the party-goers moved the party to the defendant's residence across the street.

At approximately 3:30 a.m., the victim walked into the living room to complain about the noise, as he was trying to sleep. According to witnesses, he told the defendant to "shut the fuck up," and a heated discussion ensued. No blows were exchanged. The others left the residence during the discussion, and the defendant remained with the victim.

Morrissey, who was drifting in and out of sleep, heard the raised voices and recalled hearing the victim say, "Thirty days and you're out of here," which he interpreted to mean the victim had given the defendant notice to move out. He then drifted back to sleep and was awakened by approximately four loud noises. He heard a loud banging on his bedroom door. The door opened to reveal the victim, who was bleeding. The victim told Morrissey to call an

-5-

ambulance. Morrissey dialed 911, and the ambulance arrived approximately five minutes later.

A witness who was observing the defendant's house from inside the residence at 129 Burbank saw the defendant across the street pass his (the defendant's) living room window twice and then heard the shots. He saw the defendant exit 128 Burbank with a gun in his left hand. The defendant knocked on a neighbor's door and asked to be let in; however, he was refused entry.

Officers found the defendant approximately one-half mile away from the scene, pushing a stolen bicycle. He attempted to flee when he saw the officers. Officers grabbed the defendant and a gun flew out of his waistband during the struggle. The gun, a .38 caliber Rossi, was empty. Six casings were later found in the front of the defendant's residence. The defendant was arrested for a violation of 187 of the Penal Code and transported to Ventura County Medical Center for a blood sample to be drawn. The defendant was extremely agitated, hyperventilating, and screaming obscenities continuously from the time of his arrest. He denied any complicity in the shooting, but made admissions such as "I did fucking society a favor," and "I hope I killed that mother fucker." At one point, he asked an officer "Is Tom dead?" and then under his breath said "He'd better be dead. I put six fucking rounds in him."

The victim was transported to the hospital and was pronounced dead at 4:34 a.m. He received five gunshot wounds: One bullet entered the back of the neck and exited the front of the neck; one bullet entered the back of the left shoulder and lodged in the

chest, perforating the left lung and left hemothorax; a third bullet entered the back and exited the left chest, also perforating the left lung and hemothorax; a fourth bullet entered the right chest and exited the left back, perforating the right lung, vertebral column, and right hemothorax; a fifth bullet grazed the right lower arm. Following an autopsy, Ronald O'Halloran, M.D., proclaimed the cause of death to be gunshot wounds to the chest. Two of the wounds were reported to have made at close range.

The defendant's blood alcohol level was found to be .26 percent, and a blood sample revealed the presence of cocaine.

Witnesses later stated that the defendant had recently been laid off from work and was also upset by his girlfriend's refusal to continue their relationship.

A search warrant was obtained, and the defendant's residence was searched. Four bullet holes were found in the bedspread, blankets, and top sheet. One bullet shattered a sliding glass door, and was not found. One slug was found in the wall. Three expended bullets were recovered from the floor under the carpet.

DEFENDANT'S STATEMENT:

The defendant refused to be interviewed by the probation officer; therefore, no information was obtained.

VICTIM INFORMATION:

Ms. Betty Crawford, the deceased victim's mother, was contacted on December 1, 1989, and was reluctant to talk about her feelings regarding the case, other than to say she hoped the defendant would receive the maximum sentence. She did not suffer a financial loss, as the victim's insurance covered all expenses.

-7-

She submitted a letter which is attached to and made a part of this report.

FINANCIAL STATUS:

Unknown.

TIME IN CUSTODY/JAIL INCIDENT REPORTS:

The defendant was arrested on May 20, 1989, and has remained in continuous custody for a total of 206 days actual time. The defendant has received four minor write-ups since his initial booking date, for which he was advised. He has received one major write-up for disrespect, which is pending.

EVALUATION:

Sentencing Alternatives: Violation of Section 187 of the Penal Code, second degree, is a nonalternative felony, punishable by a commitment of 15 years to life in state prison.

The use of a firearm allegation was found to be true, pursuant to Section 12022.5(a) of the Penal Code, which carries an additional term of two years.

The defendant is ineligible for probation, pursuant to Section 1203.06 of the Penal Code.

Analysis: In the instant matter, the defendant shot the victim five times during an unwitnessed argument. As he is ineligible for probation, and must receive an indeterminate sentence, the only sentencing alternative that needs to be addressed concerns the imposition of the additional two years for the 12022.5(a) Penal Code enhancement. There appear to be no mitigating circumstances that would justify striking the punishment for the enhancement. In addition, as this sentence is an

-8-

indeterminate one, the defendant should serve the time for the enhancement before serving the sentence for the primary offense.

RECOMMENDATION:

It is respectfully recommended that:

The defendant be sentenced to state prison for 15 years to life, to be served consecutive to the two year enhancement for the use of a firearm.

Respectfully submitted,

_____
Elizabeth A. Krene
Deputy Probation Officer


Lawrence Dobbs; 654-2109
Supervising DPO

THE WITHIN AND FOREGOING REPORT
OF PROBATION OFFICER HAS BEEN
READ AND CONSIDERED BY ME THIS
_____ DAY OF DECEMBER, 1989.

_____
JUDGE OF THE SUPERIOR COURT

EAK:ne127