**EXHIBIT 5**



# OFFICE OF THE GOVERNOR

September 28, 2006

*Via Facsimile and U.S. Mail*

Mr. Michael Jones, E-40401
*Correctional Training Facility*
Central Facility – G Wing – B319L
Post Office Box 686
Soledad, California 93960

Dear Mr. Jones:

    Penal Code section 3041.2 authorizes the Governor to review parole decisions of the Board of Parole Hearings (Board) concerning persons sentenced to an indeterminate term upon conviction of murder.

    After considering the same factors considered by the Board, the Governor has invoked his authority to <u>reverse</u> the Board's decision to grant parole in your case. The Governor's statement of the reasons for his decision is attached.

    A copy of this letter is being provided to you via facsimile, and the signed original (along with a statement of the reasons for his decision) is being sent by mail. Additionally, we are transmitting a copy of this letter and the attached decision to the Chairperson of the Board of Parole Hearings.

Sincerely,

ANDREA LYNN HOCH
Legal Affairs Secretary

Attachment

cc: Board of Parole Hearings (w/attachment)

INDETERMINATE SENTENCE PAROLE RELEASE REVIEW
(Penal Code Section 3041.2)

MICHAEL JONES, E-40401
SECOND-DEGREE MURDER

AFFIRM: _____

MODIFY: _____

REVERSE: ____X_____

On May 20, 1989, Michael Jones shot to death his roommate Thomas Day during a drunken argument. Mr. Jones and Mr. Day had been roommates for the previous two years. They lived together in a house with a third roommate, Alex Morrissey. The evening before the murder, Mr. Jones was drinking at a bar with friends. The group left the bar and went to the home of Bernie Hoffard, who lived across the street from Mr. Jones. On the way to Mr. Hoffard's house, Mr. Jones showed a revolver to one of his friends and said that he needed it for protection. He also asked that the gun not be mentioned to anyone.

At Mr. Hoffard's house, the group played cards and continued to drink beer. At approximately 3 a.m. on the morning of the murder, the group moved to Mr. Jones's house, where the card playing and beer drinking continued. At some point, Mr. Day came out of his room to complain about the noise. Mr. Jones told him that he paid rent and was entitled to invite people to the house. Mr. Hoffard suggested that the party move back to his house, but recommended that Mr. Jones stay home. Mr. Jones complied, and the others left. Mr. Morrissey, who was also in the house, overheard Mr. Day tell Mr. Jones, "Thirty days and you are out of here." He then heard several gun shots. Mr. Day, who was shot five times, knocked on Mr. Morrissey's door and asked him to call an ambulance. Mr. Day was dead by the time the ambulance arrived.

Mr. Jones fled the house and took a bicycle from a neighbor's garage. Police officers saw him with the bicycle and arrested him. He told police officers that he "did fucking society a favor" and he "hoped [he] killed that mother fucker."

When he committed this crime, Mr. Jones was 25 years old. Although he had no criminal record as a juvenile, he was convicted as an adult for drunk driving. In addition, he was arrested once, but not charged, with being drunk in public. Following a jury trial for Mr. Day's murder, Mr. Jones was convicted of second-degree murder with the use of a firearm. He was sentenced to 15 years to life, plus a consecutive two-year term for the firearm enhancement. The judgment was affirmed on appeal.

I have considered various positive factors in reviewing whether Mr. Jones is suitable for parole at this time. In addition to remaining discipline-free for his entire period of incarceration, Mr. Jones made efforts to enhance his ability to function within the law upon release. He received a GED in 1991 and took college courses, and he was trained in sexually transmitted and infectious diseases. He also completed vocational training in screen process printing and took courses in

Michael Jones, E-40401
Second-Degree Murder
Page 2

business management. He worked institutional jobs in the culinary department, the inmate day labor program, and the maintenance and yard crews. He availed himself of an array of self-help and therapy, including Alcoholics Anonymous, the Twelve Step Program, Anger Management, Family Effectiveness Training, Fatherhood and Anger Management, Impact, Life Skills Program, and video training. He maintains seemingly solid relationships and close ties with supportive family and friends, and he received some positive evaluations from mental-health and correctional professionals over the years. He also made plans upon his release to live in a family-owned home in San Bernardino County, the county to which the Board approved his parole, and to work with a family-owned construction company.

Despite the positive factors I have considered, the second-degree murder for which Mr. Jones was convicted was extremely brutal and callous. According to the probation report, Mr. Day asked Mr. Jones and his friends to be quiet because he was trying to sleep. When the group left, Mr. Day and Mr. Jones argued and, at one point, Mr. Day said, "Thirty days and you're out of here." Mr. Jones then shot him five times in the neck, shoulder, chest and arm, leaving perforations in the chest, vertebral column and lungs. Three of the shots were fired into his back, and two at close range. After shooting Mr. Day and leaving him bleeding from his wounds, Mr. Jones fled the scene, demonstrating an exceptionally callous disregard for human suffering. Mr. Day had to bang on Mr. Morrissey's door to ask him to call for an ambulance. But by the time the ambulance arrived, according to the Court of Appeal opinion, Mr. Day had stopped breathing and could not be revived. The gravity of the second-degree murder committed by Mr. Jones is alone sufficient for me to conclude presently that his release from prison would pose an unreasonable public-safety risk. The Ventura County District Attorney's Office agrees, registering opposition to Mr. Jones's parole to the 2006 Board based, in part, on the gravity of the offense.

Mr. Jones was intoxicated when he murdered Mr. Day. Concerning the details of the life offense, he told the 2006 Board, "I just don't remember." According to the probation report, however, following Mr. Jones's arrest, he told police officers that, "[Mr. Day had] better be dead. I put six fucking rounds in him." Moreover, several days after the murder, according to the Court of Appeal opinion, he admitted to a friend that he knew what he was doing at the time and "the dick head deserved it." Regarding the latter statement, Mr. Jones told his 2006 mental-health evaluator that he was lying when he made the statement and was trying to be a "tough guy." He told the 2006 Board that he made the statement as a way of coping with what he had done. Mr. Jones now says that he accepts responsibility for his crime and is remorseful for his actions.

The 2006 Board noted Mr. Jones's alcohol abuse, finding that he committed the offense "as a result of significant stress in [his] life." Mr. Jones may have been an alcoholic at the time. But as he told the 2006 Board, he was aware that he had suffered from black outs previously. Furthermore, as he told his 1999 mental-health evaluator, he was even aware of available treatment for his alcohol problem, having attended Alcoholics Anonymous prior to the life offense. Regardless of whether Mr. Jones was under stress when he perpetrated the life offense, I believe that factor, by itself and based on the current record before me, is insufficient to mitigate the nature and circumstances of the murder.

Michael Jones, E-40401
Second-Degree Murder
Page 3

At age 43 now, after being incarcerated for more than 17 years, Mr. Jones has made some creditable gains. In finding him suitable for parole, the 2006 Board noted that his current "advanced age" reduced the probability of recidivism. But given the current record before me, and after carefully considering the very same factors the Board must consider, I find that the gravity of the murder perpetrated by Mr. Jones presently outweighs the positive factors. Accordingly, because I believe his release would pose an unreasonable risk of danger to society at this time, I REVERSE the Board's 2006 decision to grant parole to Mr. Jones.

Decision Date: 9-22-2006

ARNOLD SCHWARZENEGGER
Governor, State of California