# EXHIBIT 6

MC-27

Name  Michael S. Jones

Address  Correctional Training Facility

P.O. Box 689 (GW-319)

Soledad, CA 93960-0689

CDC or ID Number  #E-40401

VENTURA
SUPERIOR COURT
**FILED**

FEB 0 2 2007

MICHAEL D. PLANET,
Executive Officer and Clerk
BY:_____, Deputy

THE SUPERIOR OF CALIFORNIA

IN AND FOR THE COUNTY OF VENTURA

*(Court)*

MICHAEL S. JONES

Petitioner

vs.

ARNOLD SCHWARZENEGGER, GOVERNOR

Respondent

**PETITION FOR WRIT OF HABEAS CORPUS**

No. CR24985

*(To be supplied by the Clerk of the Court)*

## INSTRUCTIONS — READ CAREFULLY

- **If you are challenging an order of commitment or a criminal conviction and are filing this petition in the Superior Court, you should file it in the county that made the order.**

- **If you are challenging the conditions of your confinement and are filing this petition in the Superior Court, you should file it in the county in which you are confined.**

- Read the entire form *before* answering any questions.

- This petition must be clearly handwritten in ink or typed. You should exercise care to make sure all answers are true and correct. Because the petition includes a verification, the making of a statement that you know is false may result in a conviction for perjury.

- Answer all applicable questions in the proper spaces. If you need additional space, add an extra page and indicate that your answer is "continued on additional page."

- If you are filing this petition in the Superior Court, you need file only the original unless local rules require additional copies. Many courts require more copies.

- If you are filing this petition in the Court of Appeal, file the original and four copies.

- If you are filing this petition in the California Supreme Court, file the original and thirteen copies.

- Notify the Clerk of the Court in writing if you change your address after filing your petition.

- In most cases, the law requires service of a copy of the petition on the district attorney, city attorney, or city prosecutor. See Penal Code section 1475 and Government Code section 72193. You may serve the copy by mail.

Approved by the Judicial Council of California for use under Rules 56.5 and 201(h)(1) of the California Rules of Court [as amended effective January 1, 1999]. Subsequent amendments to Rule 44(b) may change the number of copies to be furnished the Supreme Court and Court of Appeal.

Page one of six

Form Approved by the
Judicial Council of California
MC-275 [Rev. January 1, 1999]
Optional Form

**PETITION FOR WRIT OF HABEAS CORPUS**

WEST
GROUP

Penal Code, § 1473 et seq.;
Cal. Rules of Court, rules 56.5, 201(b).

Name  Michael S. Jones

Address  Correctional Training Facility

P.O. Box 689 (GW-319)

Soledad, CA 93960-0689

CDC or ID Number  #E-40401

THE SUPERIOR OF CALIFORNIA

IN AND FOR THE COUNTY OF VENTURA

*(Court)*

| | |
|---|---|
| MICHAEL S. JONES<br>Petitioner<br><br>vs.<br><br>ARNOLD SCHWARZENEGGER, GOVERNOR<br><br>Respondent | **PETITION FOR WRIT OF HABEAS CORPUS**<br><br>No. _____<br>*(To be supplied by the Clerk of the Court)* |

## INSTRUCTIONS — READ CAREFULLY

- **If you are challenging an order of commitment or a criminal conviction and are filing this petition in the Superior Court, you should file it in the county that made the order.**

- **If you are challenging the conditions of your confinement and are filing this petition in the Superior Court, you should file it in the county in which you are confined.**

- Read the entire form *before* answering any questions.

- This petition must be clearly handwritten in ink or typed. You should exercise care to make sure all answers are true and correct. Because the petition includes a verification, the making of a statement that you know is false may result in a conviction for perjury.

- Answer all applicable questions in the proper spaces. If you need additional space, add an extra page and indicate that your answer is "continued on additional page."

- If you are filing this petition in the Superior Court, you need file only the original unless local rules require additional copies. Many courts require more copies.

- If you are filing this petition in the Court of Appeal, file the original and four copies.

- If you are filing this petition in the California Supreme Court, file the original and thirteen copies.

- Notify the Clerk of the Court in writing if you change your address after filing your petition.

- In most cases, the law requires service of a copy of the petition on the district attorney, city attorney, or city prosecutor. See Penal Code section 1475 and Government Code section 72193. You may serve the copy by mail.

Approved by the Judicial Council of California for use under Rules 56.5 and 201(h)(1) of the California Rules of Court [as amended effective January 1, 1999]. Subsequent amendments to Rule 44(b) may change the number of copies to be furnished the Supreme Court and Court of Appeal.

Form Approved by the
Judicial Council of California
MC-275 [Rev. January 1, 1999]
Optional Form

**PETITION FOR WRIT OF HABEAS CORPUS**   WEST GROUP

Penal Code, § 1473 et seq.;
Cal. Rules of Court, rules 56.5, 201(h).

**This petition concerns:**

[ ] A conviction                [XX] Parole

[ ] A sentence                  [ ] Credits

[ ] Jail or prison conditions   [ ] Prison discipline

[XX] Other (specify): Governor's Reversal of Grant of Parole

1. Your name: Michael Scott Jones

2. Where are you incarcerated? Correctional Training Facility - Soledad California

3. Why are you in custody?   [XX] Criminal Conviction   [ ] Civil Commitment

    *Answer subdivisions a. through i. to the best of your ability.*

    a. State reason for civil commitment or, if criminal conviction, state nature of offense and enhancements (for example, "robbery with use of a deadly weapon").

       Second degree murder with use of a gun

    b. Penal or other code sections: Penal Code § 187, § 12022.5(a)

    c. Name and location of sentencing or committing court: Ventura County Superior Court - 800 S. Victoria Avenue - Ventura, California 93009

    d. Case number: CR24985

    e. Date convicted or committed: November 13, 1989

    f. Date sentenced: December 11, 1989

    g. Length of sentence: 15 years to life plus 2 years gun enhancement

    h. When do you expect to be released? Unknown - overdue

    i. Were you represented by counsel in the trial court?   [X] Yes.   [ ] No.   If yes, state the attorney's name and address:

       Neil B. Quinn - Deputy Public Defender - Ventura County's Public Defender Office.

4. What was the LAST plea you entered? *(check one)*

    [XX] Not guilty   [ ] Guilty   [ ] Nolo Contendere   [ ] Other: _____

5. If you pleaded not guilty, what kind of trial did you have?

    [XX] Jury   [ ] Judge without a jury   [ ] Submitted on transcript   [ ] Awaiting trial

6. GROUNDS FOR RELIEF

**Ground 1:** State briefly the ground on which you base your claim for relief. For example, "the trial court imposed an illegal enhancement." *(If you have additional grounds for relief, use a separate page for each ground. State ground 2 on page four. For additional grounds, make copies of page four and number the additional grounds in order.)*

Please See Attached Page 7

a. Supporting facts:

Tell your story briefly without citing cases or law. If you are challenging the legality of your conviction, describe the facts upon which your conviction is based. *If necessary, attach additional pages.* CAUTION: You must state facts, not conclusions. For example, if you are claiming incompetence of counsel you must state facts specifically setting forth what your attorney did or failed to do and how that affected your trial. Failure to allege sufficient facts will result in the denial of your petition. (See *In re Swain* (1949) 34 Cal.2d 300, 304.) A rule of thumb to follow is: *who* did exactly *what* to violate your rights at what time *(when)* or place *(where)*. (If available, attach declarations, relevant records, transcripts, or other documents supporting your claim.)

Please See Attached Page 7

b. Supporting cases, rules, or other authority (optional):

*(Briefly discuss, or list by name and citation, the cases or other authorities that you think are relevant to your claim. If necessary, attach an extra page.)*

7. **Ground 2** or **Ground** _____ (*if applicable*):

_____

_____

_____

_____

a.  Supporting facts:

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

b.  Supporting cases, rules, or other authority:

_____

_____

_____

_____

_____

8. Did you appeal from the conviction, sentence, or commitment?  [XX] Yes.  [ ] No.  If yes, give the following information:

   a. Name of court ("Court of Appeal" or "Appellate Dept. of Superior Court"):

     California Court Of Appeal - Second Appellate District

   b. Result: Judgment Affirmed       c. Date of decision: March 21, 1991

   d. Case number or citation of opinion, if known: B047476

   e. Issues raised: (1) As All The Court's Instructions On Mental States Referred To Malice Or The Intent To Kill, The Court Erred In Giving An Elements Instruction On 2nd Degree Murder (CALJIC 8.31) That Did Not Mention Malice The Court Erred In Refusin Appelant's Requested Jury Instructions That Informed That Explicitly Informed The (2) Jury Of The Types of Voluntary Manslaughter That Exists Where Malice Is Lacking... Voluntary Intoxication The Court Erred In Refusing To Give Appellant's Proposed Instruction On Types Of Emotions That Can Constitute (3) Heat of Passion (4) The Court Erred In Failing To Include The Murder Elements Instruction The Requirement That Jury Find Absence Of Heat of Passion, Sudden Quarrel And Voluntary Intoxication Sufficient To Negate Malice

   f. Were you represented by counsel on appeal?  [XX] Yes.  [ ] No.  If yes, state the attorney's name and address, if known:

9. Did you seek review in the California Supreme Court?  [XX] Yes.  [ ] No.  If yes, give the following information:

   a. Result: Petition Denied       b. Date of decision: June 10, 1991

   c. Case number or citation of opinion, if known: B047476

   d. Issues raised: (1) Same As Appellate Court - See Above

       (2) _____

       (3) _____

10. If your petition makes a claim regarding your conviction, sentence, or commitment that you or your attorney did not make on appeal, explain why the claim was not made on appeal:

   Not Applicable

11. Administrative Review:

   a. If your petition concerns conditions of confinement or other claims for which there are administrative remedies, failure to exhaust administrative remedies may result in the denial of your petition, even if it is otherwise meritorious. (See *In re Muszalski* (1975) 52 Cal.App.3d 500 [125 Cal.Rptr. 286].) Explain what administrative review you sought or explain why you did not seek such review:

   None available against the Governor in this type of matter.

   b. Did you seek the highest level of administrative review available?  [ ] Yes.  [ ] No.

   *Attach documents that show you have exhausted your administrative remedies.*

12. Other than direct appeal, have you filed any other petitions, applications, or motions with respect to this conviction, commitment, or issue in any court? ☒ Yes. If yes, continue with number 13. ☐ No. If no, skip to number 15.

13. a. (1) Name of court: Ventura County Superior Court

(2) Nature of proceeding (for example, "habeas corpus petition"): Petition For Writ of Habeas Corpus.

(3) Issues raised: (a) Illegal denial of Parole Suitability by Board of California Prison Terms.
(Subsequent Hearing #1)

(b) _____

(4) Result (Attach order or explain why unavailable): Petition Denied.

(5) Date of decision: September 23, 2003

b. (1) Name of court: California Court of Appeal - Second Appellate District _ Division 6

(2) Nature of proceeding: Petition for Writ of Habeas Corpus.

(3) Issues raised: (a) Illegal denial of Parole Suitability by California Board of Prison Terms.
(Subsequent Hearing #1)

(b) _____

(4) Result (Attach order or explain why unavailable): Denied

(5) Date of decision: December 2, 2003

c. For additional prior petitions, applications, or motions, provide the same information on a separate page.

14. If any of the courts listed in number 13 held a hearing, state name of court, date of hearing, nature of hearing, and result:

_____

_____

15. Explain any delay in the discovery of the claimed grounds for relief and in raising the claims in this petition. (See In re Swain (1949) 34 Cal.2d 300, 304.)

There has been no delay.

_____

16. Are you presently represented by counsel? ☒ Yes. ☐ No. If yes, state the attorney's name and address, if known: Stephen Defilippis - 625 N. First Street - San Jose, CA 95112. **Please Note:** Mr. Defilippis only represents petitioner on his First Federal Petition Case No. C 04-02105 JSW.

17. Do you have any petition, appeal, or other matter pending in any court? ☐ Yes. ☒ No. If yes, explain:

_____

_____

18. If this petition might lawfully have been made to a lower court, state the circumstances justifying an application to this court:

This Court has original jurisdiction in habeas proceedings.

I, the undersigned, say: I am the petitioner in this action. I declare under penalty of perjury under the laws of the State of California that the foregoing allegations and statements are true and correct, except as to matters that are stated on my information and belief, and as to those matters, I believe them to be true.

Date: 1/30/07

▶ _Mike James_
(SIGNATURE OF PETITIONER)

Continuation of Question 13a, Page 6 of Petition.

California Supreme Court – Petition For Review (Subsequent Hearing #1)
Illegal denial of Parole Suitability by California Board of Prison Terms.
Denied on February 18, 2004.

United States District Court – Northern District of California
(Subsequent Hearing #1) Case No. C 04-02105.
Petition for Writ of Habeas Corpus
Illegal denial of Parole Suitability by California Board of Prison Terms.
Denied on April 10, 2006
Motion For Reconsideration Filed – Pending.

Ventura County Superior Court – (Subsequent Hearing #2)
Petition For Writ of Habeas Corpus
Illegal denial of Parole Suitability by California Board of Prison Terms.
Denied on October 15, 2004.

California Court of Appeal – Second Appellate District (Subsequent Hearing #2)
Petition For Writ of Habeas Corpus
Illegal denial of Parole Suitability by California Board of Prison Terms.
Denied on January 13, 2005.

California Supreme Court (Subsequent Hearing #2)
Petition For Review
Illegal denial of Parole Suitability by California Board of Prison Terms.
Petition For Review Denied on March 30 2005.

United States District Court – Northern District of California
Case No. C 05-2573 JSW(PR) (Subsequent Hearing #2)
Petition For Writ of Habeas Corpus
Illegal Denial of Parole Suitability by California Board of Prison Terms.
Respondent's Filed Motion to Stay Proceedings – March 3, 2006.
Petitioner Filed Opposition To Motion To Stay Proceedings on April 7, 2006.
Court Granted Order to Stay Proceedings on March 17, 2006 – Pending...

THE GOVERNOR VIOLATED PETITIONER'S DUE PROCESS AND DEPRIVED HIM OF HIS FEDERALLY PROTECTED LIBERTY INTEREST WHEN HE REVERSED PETITIONER'S PAROLE GRANT WITHOUT ANY RELIABLE EVIDENCE DEMONSTRATING PETITIONER CURRENTLY ENDANGERS PUBLIC SAFETY IN VIOLATION OF THE 5TH AND 14TH AMENDMENT TO THE UNITED STATES CONSTITUTION.

Supporting facts:

1. On May 1, 2006, Petitioner appeared before the Board of Parole hearings (BPH) for the fourth time, was found suitable for parole, and his term computed. (See Exhibit A, Transcript of Petitioner's May 1, 2006, Parole Hearing, incorporated by reference.) The Governor reversed that decision, and denied parole to Petitioner. (See Exhibit B, copy of letter dated September 28, 2006, from the Governor's Legal Affairs Secretary, with Governor Schwarzenegger's Reversal Opinion attached incorporated by reference.) In essence, the Governor failed to properly recognize Petitioner's pre-offense crime free life, his disciplinary free and otherwise excellent prison program, and that Petitioner accepts responsibility for his actions and is truly sorry for he did. However, the Governor noted his belief that Petitioner "Committed an extremely brutal and callous second-degree murder demonstrating an exceptionally callous disregard for human suffering, because he fled the scene." Petitioner will demonstrate in the below paragraphs the Governor's declaration is not supported by the evidence.

2. Petitioner previously appeared before the Board in 1999, 2002, and 2004 See Exhibit C, chronologically arranged copies of these previous decisions, incorporated by reference, for information purposes only. This writ appeals only the Governor's reversal of the 2006 grant of parole.

3. On May 19, 1989, Petitioner shot and killed his roommate Thomas Day. The type of wounds suffered by the victim clearly demonstrate death was almost instantaneous. The facts and causes of this unfortunate killing

are well documented. See Exhibit A, pp.7-10, Exhibit D, Psychiatric Evaluation dated January 14, 2006, prepared by M. Macomber, Ph.D. Staff Psychologist, incorporated by reference.

As the records show, Petitioner's mother and father divorced when he was approximately five years of age. He and his brother remained with his mother and her new husband until he was approximately ten, at which time he went to live with his father in Hawaii. After moving to Hawaii with his father, he and his brother stayed for approximately one year. He then returned to live his mother and her new husband, but he never really got along with the new husband, and moved back to live with father. This same changing of residence occurred a couple more times, and then at age 16 he became legally emancipated. He was living on his own, working and attending high school, but due to the pressures of taking care of himself he dropped out of high school. Petitioner had known the victim for approximately 7 years and had lived with him for three years prior to commitment offense. Petitioner's girlfriend had recently broken up with him, as a result he was distraught and began drinking excessively. He was told to take time off of work due to being agitated at work because of the issues with the failed relationship. He began drinking at noon on the day of the instant offense, he left work early, and went to a tool convention where he began drinking. Upon leaving the convention he stopped at a liquor store to purchase more alcohol and returned home, where he continued drinking, until friends came by to ask if wanted to go to the bar with them. The group left the bar went to the home of Bernie who lived across the street from Petitioner. A friend drove Petitioner to his neighbor's house. Petitioner showed a revolver to the friend stating he needed it for protection and asked that the gun not be mentioned to anyone. The neighbor's brother complained about noise Petitioner and his friends

1    were making about three a.m. They then moved to Petitioner's house across

2    the street, card playing and beer drinking until the victim Thomas Day

3    came out of his room to complain about the noise. Petitioner told the victim

4    he paid rent and was entitled to invite people to his house. The pair

5    briefly scuffled. The neighbor suggested the group move back to his house,

6    but recommended Petitioner call it an evening and stay home. Petitioner

7    complied and the others left. Another argument ensued between Petitioner

8    and the victim. Morrissey, the third roommate, heard the victim tell

9    Petitioner, "30 days and you're out of here". Morrissey and several

10   neighbor's then heard the sounds of gunshots. Then the victim knocked on

11   Morrisssey's bedroom door and asked him to call an ambulance. By the time

12   the ambulance arrived Day had stopped breathing and could not be revived.

13   Petitioner left the house and took a bicycle from a neighbor's garage and

14   rode away. A police officer saw Petitioner riding the bicycle Petitioner

15   jumped off the bike and began running when the officer approached. Another

16   officer tackled him and a gun skidded away from his body. He was arrested.

17   4. Petitioner was convicted by jury trial of second degree murder, and

18   was sentenced to 15 years to life, plus a two year enhancement for the

19   weapon. This court found from its inception this case was not a premeditated

20   murder, and further recognized that Petitioner had a need to be housed

21   at a facility in the Department of Corrections that was best equipped to

22   deal with what this court perceived was a substantial psychiatric and/or

23   psychological problem, along with substance abuse. (See Exhibit E, at pp.

24   2 and 8-9, Copy of the Sentencing Transcripts, incorporated by reference)

25   As the records show, Petitioner has sought out and participated in self-help

26   groups/programs since his arrrival in the Department of Corrections, and

27   continues to participate in AA/NA along with Anger Management classes.

28   (see Exhibit A, at p. 60-61 and 66-67. Also see Exhibit F, Copies of

-9-

1  AA/NA Laudatory Chronos, Anger Management, etc..)

2  5. Petitioner's prior criminal history consist of an arrest for DUI, and

3  Drunk in Public for which he was held until he sobered up and then released.

4  6. Petitioner has received no serious disciplinaries while in prison — no

5  CDC 115's and only two 128's (Exhibit A, p.62), has realistic parole plans

6  (Id. at 61), is remorseful (Id. at 62) and while in prison has upgraded

7  vocationally and educationally (Id. at 60. Also see Exhibit G, Copies of

8  GED, Vocation Completion, and College grades).

9  7. Petitioner has received numerous letters from family and friends

10 supporting his being released on parole, contianing job offers and offers

11 of residence, etc. (See Exhibit A, p.61. Also see Exhibit H, copies of these

12 letters, incorporated by reference.)

13 8. The CDC psychological evaluations of Petitioner prepared for the Board

14 unequivocally supports his being released onto parole (See Exhibit D, the

15 January 14, 2006, Psychological Evaluation of Petitioner for the Board,

16 as well as the previous evaluation on which it partially relies, incorporated

17 by reference.) The Psychologist found that Petitioner's "prognosis for

18 community adjustment is excellent" (Exhibit D, pp.3-4), he expressed deep

19 remorse for committing the crime, (Id. p.2), takes responsibility for his

20 actions (Id. at p.1), "his violence potential is estimated to be no higher

21 than that of the average citizen in the community." (Id. at p.3).

22 9. The CDC Custody Counselor's Life Evaluation Report (LPER) prepared for

23 the Board, supports Petitioner being released on parole. (See Exhibit I,

24 copies of CDC Custody Counselor's prepared Life Evaluation Reports (LPER's)

25 documenting Petitioner's prison performance record, incorporated by

26 reference.)

27 10. The Governor's (Exhibit B, p.2) finding that the offense was carried

28 out in a manner which demonstrated an exceptionally callous disregard for

-10-

1 human suffering is clearly contrary to the facts in the record and to

2 governing law. A Cal. Code Regs., title 15, §240(c)(1)(D) finding of

3 exceptionally callus disregard for human suffering requires the intent

4 and act of inflicting prolonged torturous pain, simply not present in this

5 case. (See e.g. In re Rosenkrnatz (2002) 80 Cal.App.4th 409, 419-420; In

6 re Earnest Smith (2003) 114 Cal.App.4th 343, 366.)

7 11. The sole basis for which the Governor has reversed Petitioner's parole

8 grant are the circumstance of the crime he committed. However, the validity

9 of the predictive value of the unchanging circumstances of an offense

10 committed over 17 years ago as an indicator of future dangerousness is

11 nil at best, precluding crime factors used in this case to support a finding

12 of current dangerousness. (See In re Lee (2006) Cal.RPtr.3d 931, 936,)

13 holding the factors of a crime in that case involving multiple shooting

14 victims, including one murder, lacks predictive value after 10 years, when

15 accompanied by positive prison performance and lack of a [significant]

16 criminal record.) Petitioner also appeals the specific factors used by

17 the Governor to support his reversal of his parole grant, alleging no

18 evidence or legal basis supports his application to his case factors,

19 rendering their use arbitrary.

20 12. Petitioner's life term started on 9/2/1990. (See Exhibit A, p.1.) To

21 date, he has served 15½ years on that term, for which he received 62 months

22 of Cal. Code Regs., title 15, §2410 post-conviction credit resulting in

23 his having served an equivalent of 20½ yeas of imprisonment. The uniform

24 term for Petitioner's crime facts is a §2403(c), Matrix II-B, 17-18-19

25 year term. Category B applies, due to death being almost immediate. Assuming

26 the aggravated term for multiple shots/wounds, Petitioner has served almost

27 three more than required for the gravity of the crime.

28

**PRAYER**

WHEREFORE, Petitioner prays this Court:

1. Find no relevant evidence in the record supports the Governor's decision to reverse parole,

2. Find no evidence demonstrates any factor enumerated in Cal. Code Regs., tit, §2402(c)(1)(A) through (E) supports the Governor's finding Petitioner's offense is heinous or (even more attocious, therefore,

3. Order Petitioner released forthwith.

4. Expedite this matter, by granting calendar preference, as Petitioner is overdue for release.

1

2

## MEMORANDUM OF POINTS AND AUTHORITY

### INTRODUCTION

3

4   California Constitution, Article V, §8(b) and its implementing

5   statute, Penal Code §304.2, provides the Governor the authority to review

6   a parole decision, and as part of that review, to affirm, modify or reverse

7   that decision. The Governor must provide a statement of his reasoning

8   for the decision to reverse a grant of parole, must make and issue that

9   decision within 30 days after the Board's decision becomes final. He must

10  review the record before the Board and cannot consider additional evidence.

11  further, his decision must be based on the same factors the Board is

12  required to considered (In re Rosenkantz (2002) 29 Cal.4th 616.) The

13  decision must be based on some reliable evidence, relevant evidence. (Id.

14  at 676-677.) To constitute "some evidence," the information relied upon

15  by the Governor must tend to logically, and by reasonable inference, to

16  establish a fact relevant to the inmate's suitability for parole. (In

17  re Morrall (2002) 125 Cal.Rptr.2d 397, 407.) The evidence must show the

18  prisoner would currently be a threat to society if released. A standard

19  as the Governor fails to meet in this case, rendering his decision to

20  reverse an abuse of discretion and arbitrary.

21

### LEGAL ARGUMENT

22

### I. PETITIONER HAS A FEDERALLY PROTECTED LIBERTY INTEREST IN PAROLE RELEASE.

23

24  It is well established that all indeterminately sentenced prisoners

25  possess a federally protected liberty interest. See McQuillion v. Duncan

26  (9th Cir. 2002) 306 F.3d 895, 901-902; Biggs v. Terhune (9th Cir. 2003)

27  334 F.3d 910, 914-915, relying on Greenholtz . Inmates of Nebraska (1979)

28  441 U.S. 1); Board of Pardons v. Allen (1987) 482 U.S. 369, 377-378,

1  clearly reasoning that the similar structure and phrasing of California's

2  parole statutes (Penal Code §3041, subd. (b)) when compared to those of

3  Nebraska and Montana produces the same result in this state – a federally

4  protected liberty interest. A liberty interest the <u>Biggs</u> court held on

5  pp. 94-95, arises "upon the incarceration of the inmate." The recent

6  decision in <u>In re Dannenberg</u> (2005) 34 Cal.4th 1061 is limited to the

7  uniform term provision of Penal Code section 3041, subd.(a), and has no

8  bearing on the Ninth Circuit holding that the mandatory language of

9  sub-section (b) creates a liberty interest in parole.

10          II. DENIAL OF PAROLE FOR FOURTH TIME BASED ON
                THE IMMUTABLE CIRCUMSTANCES OF THE COMMITMENT
11              OFFENSE, AFTER 17 YEARS, WHILE IGNORING
                REHABILITATION DEMONSTARATED BY LONG TERM
12              EXEMPLARY PRISON PROGRAMMING, DEPRIVES A
                PRISONER OF DUE PROCESS.
13

14      State and federal courts have repeatedly held that even if the offense

15  circumstances are considered under regulatory law to support parole

16  denial, due process may preclude the crime alone justifying repeated

17  parole denials, in the face of a prison record demonstrating

18  rehabilitation. (See e.g. <u>In re Smith</u> (2003) 114 Cal.App.4th 343, 372;

19  <u>Biggs v. Terhune</u> (9th Cir. 2003) 334 F.3d 910-916-917; <u>In re Scott</u> (2005)

20  35 Cal.Rptr. 905, 919-920; <u>Irons v. Warden</u> (E.D. Cal. 2005) 358 F.Supp.3d

21  936, 947947). Disregarding that standard, the state parole executive

22  has denied Petitioner parole four times, each time based on the unchanging

23  factors of his offense. Findings that ignore or improperly discount

24  Petitioner having led a crime free life and having a prison record without

25  a disciplinary during his 15½ years of imprisonment, his having positively

26  programmed, and his repeatedly demonstrated remorse for the resulting

27  loss of life.

28      As the record shows, Petitioner has demonstrated his rehabilitation

1 | by participating in self-help programmming, educational improvement and
2 | successfully working in various jobs. The CDC mental health staff evaluated
3 | Petitioner for the Board and supports his release on parole, finding he
4 | would pose a reasonable degree of threat to the public if released on
5 | parole. (See Exhibit D.) The CDC Custody Counselor made a similar finding.

6 |   Clearly referring to a prisoner having been denied parole numerous
7 | times based on unchangeable factors; with a prison record such as
8 | Petitioner's, the court in Biggs v. Tehune, supra, 334 F.3d, held:

> "[While] the parole board's sole supportable reliance
> on the gravity of the offense and conduct prior to
> imprisonment to justify denial of parole [may] be
> initially justified as fulfilling the requirements set
> forth by state law, [o]ver time, however, should [a
> prisoner] continue to demonstrate exemplary behavior
> and evidence of rehabilitation, denying him parole simply
> because of the nature of his offense would raise serious
> questions involving his liberty interest in parole."
> (Id. at 916.)

15 |   In People v. Seel (2004) Cal.4th 535, 546, the State Supreme Court
16 | held, "The degree of criminal culpability the legislature chooses to
17 | associate with particular, factual distinct conduct has significant
18 | implications both for a defendant's very liberty and the heightened stigma
19 | associated with offense the legislature has selected worthy of greater
20 | punishment. (Apprendi v. New Jersey (2000) 503 U.S. 466, 495." The jury
21 | in this case found petitioner's culpability to be that of second-degree
22 | murder. The Governor's heightening of Petitioner's culpability by defining
23 | his offense conduct and elements as those of a first-degree murder i.e.
24 | one demonstrating premeditated conduct, and requiring he serve a prison
25 | term allocated solely for that crime, runs counter to this legislative
26 | policy noted by the Supreme Court. While the uniform term for Petitioner's
27 | offense is in fact a Cal. Code Regs., title 15, § 2403(c), Matrix II-B,
28 | 17-18-19 (credit) year term, with his [now] 5+ years of post-conviction

1  credits applied, Petitioner has now served a 20 year prison term, therefore

2  one exceeding that required for his offense. To allow parole denial solely

3  on the facts of the crime after a prisoner has served the term specified

4  by statute and regulation for the gravity (factual) circumstances of that

5  crime can only be described as a unconstitutionally vague standard. See

6  In re Dannenberg, supra, fn. 7, at p. 1079, holding when a prisoner's term

7  of imprisonment is set, it cannot be of a length lesser or greater than

8  that specified by [statute and] regulation. On the other hand, Dannenberg

9  permits parole denial based on facts of the offense which are more than

10  the minimum necessary to support a conviction. A standard which is undefined

11  and can arbitrarily be applied to every murder offense. Petitioner thus

12  has no idea of what is expected or prohibited in this matter, enabling

13  his being retained in prison,. The fn. 7 Dannenberg standard or the minimum

14  necessary  standard?  Such  a  conflict  renders  the  state  standard

15  constitutuionally vague.

16     In this case, the Governor [again] relied on the alleged predictive

17  value of Petitioner's offense as a basis for reversing his grant of parole

18  from his parole hearing. Assessing a similar chronological situation, for

19  a far more serious first-degree murder and associated crimes than that

20  committed by Petitioner, a federal district court judge reasoned that:

21          Whether the facts of the crime of conviction, or other
            unchanged criteria, affect the parole eligibility decision
22          can only be predicted on the "predictive value" of the
            unchanged circumstance. Otherwise, if the unchanged
23          circumstances per se can be used to deny parole
            eligibility, sentencing is taken out of the hands of
24          the judge and totally reposited in the hands of the BPT.
            That is, parole can be denied indefinitely and forever
25          delayed based on the nature of the crime even though
            the sentence given set forth the possibility of parole
26          – a sentence given with the facts of the crime fresh
            in the mind of the judge. While it would not be a
27          constitutional violation to forgo parole altogether for
            certain crimes, what the state cannot do is have a sham
28          system where the judge promises the possibility of parole,

but because of the nature of the crime, the BPT effectively deletes such from the system. Nor can a parole system, where parole is mandated to be determined on someone's future potential to harm the community, constitutionally exist where despite 20 or more years of prison life which indicates the absence of danger to the community in the future, the BPT commissioners' revulsion toward the crime itself, or some other unchanged circumstances must indicate a present danger to the community if released, and this can only be assessed not in a vacuum, after four or five eligibility hearings, but counterpoised against a backdrop of prison events. (Relying on Bair v. Folsom State Prison, 2005 WL2219220*12, n.3 (E.Cal.2005) report recommendation adopted by 2005 WL3081634 (E.D.CA.2005).

Given the factual circumstances of this case, the Board's repeated sole reliance on the unchanging circumstances of Petitioner's crime as found by the Governor, and his characterizing it as one of a higher culpability than factually found by the jury violates Petitioner's due process. (See Martin v. Marshall (N.D. 2006) F.Supp.2d , WL 1344584, *8,*9.) The continued reliance by the Board, and now the Governor, on unchanging factors makes a sham of the state's parole system. It amounts to an arbitrary denial of Petitioner's liberty interest by converting his sentence from one of 15 years to life, to that of a more serious first-degree murder crime carrying a sentence of either 25 years to life or life without the possibility of parole. Another court in a case with a far more serious second degree murder crime than that committed by Petitioner has characterized this situation as follows:

"[C]ontinuous reliance on unchanging circumstances transforms an offense for which California law provides parole eligibility into a d facto life imprisonment with the possibility of parole. The court ask this rhetorically — what it is about the circumstances of Petitioner's crime or motivation which are going to change? The answer is nothing. The circumstances of the crime will always be what they were and Petitioner's motive for committing the [crime] will always be [what it was]. Petitioner has no hope for ever obtaining parole except that perhaps that a panel in the future will

1  arbitrarily hold that the circumstance s were not
   that serious...Given that no one seriously contends
2  lack of seriousness...at present time, the potential
   for parole in this case is remote to the point of
3  non-existence. Petitioner's liberty interest should
   not be determined by such an arbitrary, remote
4  possibility." (Irons v. Warden (E.D.Cal.2005) 358
   F.Supp.2d 936, 947.

5

6      By defining Petitioner's culpability as higher than found by the jury,

7  and by continuing to relay on those factors after 15+ years of imprisonment

8  as an indicator of present dangerousness, given Petitioner's very positive

9  prison   performance,   positive,   parole   supportive   CDC   psychological

10  evaluations and custody counselor reports (LPER's), the Governor in this

11  case has violated due process. The ability of the state parole executive

12  to predict Petitioner's future dangerousness based on the circumstances

13  is nil. Irons, Id., fn.2 at 947. Also see IN re Scott, supra, 133

14  Cal.App.4th at 595, 34 Cal.3d 905, holding:

15      "The commitment offense can negate suitability only
        if the circumstances of the crime reliably established
16      by evidence in the record rationally indicate that the
        offender will present an unreasonable public safety
17      risk if released from prison. Yet, the predictive value
        of the commit offense may be very questionable after
18      a long period of time." (Id., at 920) "Therefore, an
        unsuitability determinations must be predicted on 'some
19      evidence that the particular circumstances of [the
        prisoner's] crime — circumstances beyond the minimum
20      elements of this conviction — indicate exceptional
        callousness and cruelty with trivial provocation, and
21      thus suggest he remain a danger to public safety.' (In
        re Dannenberg, supra, 34 Cal.4th at 1098.) (Scott, Id.,
22      at 922)"

23  Nothing in Petitioner's post-conviction record provides any evidence

24  of re-offending, and his culpability and associated facts cannot be declared

25  to be higher than found the trial court. See Blakely v. Washington, (2004)

26  542 U.S. 296, 124 S.Ct. 2531, 154 L.Ed. 403, holding that while a parole

27  board may rule on the facts essential to their discretion, these facts

28  cannot preclude the defendant's legal right to a lesser sentence, and

1  therefore the right to a lesser penalty. Therefore, "the facts bearing

2  on that commitment [offense] must be found by a [trial court]." Id., 124

3  S.Ct. at 2540, 154 L.Ed.2d at 417.) Otherwise, punishment will be inflicted

4  which the jury's verdict does not allow, and a defendant's right under

5  the 6th Amendment violated (Blakely, Ibid., at 2537, 414), as is occurring

6  in this case.

7           III. CALIFORNIA'S IMPLEMENTATION OF THE "MINIMALLY
               NECESSARY" STANDARD DEPRIVES APPEARING
8              PRISONERS OF THEIR FEDERALLY PROTECTED
               LIBERTY INTEREST BY EVISCERATING THE "SOME
9              EVIDENCE" STANDARD.

10    California's parole scheme give rise to a cognizable liberty interest

11  in release on parole (Biggs v.Terhune (9th Cir.2003) 334 F.3d 910, 914-

12  915), therefore, "In the parole context, the requirements of due process

13  are met if 'some evidence' which has an indicia of reliability supports

14  the decision." (Ibid.) As the federal district court judge reasoned, Biggs

15  was serving a sentence of twenty-five to life following a sentence for

16  a 1985 first-degree murder conviction. He challenged the 1999 Board decision

17  finding him unsuitable for parole despite his record as a model prisoner.

18  (Id., at 913.) The court upheld the use of his commitment offense in that

19  case as it involves the murder of a witness, finding that the murder was

20  perpetrated by beating the victim to death using multiple blows from a

21  baseball bat, was carried out in a manner exhibiting a callous disregard

22  for life and suffering of another and that petitioner could benefit from

23  therapy. (Ibid.) However, the court cautioned that:

24           As in the present instance, the parole board's sole
           supportable reliance on the gravity of the offense
25         and conduct prior to imprisonment to justify denial
           of parole can initially be justified as fulfilling
26         the requirements set forth by state law. Over time,
           however, should [a prisoner] continue to demonstrate
27         exemplary behavior and evidence of rehabilitation,
           denying him a parole date simply because of the nature
28         of his offense would raise serious questions involving

                                  -19-

1    his liberty interest. (Id. at 916.)

2    The court also stated that in that case "[a] continued reliance on

3    an unchanging factor, the circumstances of the offense and conduct prior

4    to imprisonment, runs contrary to the rehabilitative goals espoused by

5    the prison system and could result in a due process violation." (Id. at

6    917.) A standard denoting that the parole board should determine who will

7    be a danger to the community by looking at the commitment offense in terms

8    of its predictve value. Therefore the more violent, thoughtless, and callous

9    the crime, the more likely it can be said that the perpetrator would exhibit

10    those tendencies again. However, aside from punishment, the parole

11    executive's role is to determine when these presumptions have been confirmed

12    or rebutted. The Biggs court appears to agree with In re Rosenkrantz (2002)

13    Cal.4th 616, 683, stating that in order for the Board to put weight on

14    the exceptional nature of the crime, it had to be "particularly egregious."

15    However, in 2005, the State Supreme Court redefined that term as simply

16    "that the violence of the inmate's crime must be more than the minimum

17    necessary to convict him for the offense for which he is confined." (In

18    re Dannneberg, 34 Cal.4th 1061, 1095, 23 Cal.Rptr.3d 417, 440 (2005).)

19    However, as the dissent in Dannenberg points out, this standard is

20    completely unreviewable (Id. 34 Cal.4th at 1102, 23 Cal.Rptr.3d 446), as

21    the minimal elements of a second-degree murder, are simply that a person

22    is killed with the perpetrator exhibiting the requisite intent. However,

23    since any additional fact could be viewed as "more than minimally necessary

24    to convict." As a result, Dannenberg appears to give carte blanche to the

25    state parole executive to issue a mere characterization of the crime to

26    support denial of parole, which is occurring in this case. A standard which

27    unconstitutionally insulates the parole executive from review in habeas

28    corpus.

1    As that federal judge continued to note, since federal due process
2    in parole suitability hearings arise from a liberty interest created by
3    state law, state courts may not interpret their law in such an arbitrary
4    manner that the interpretation is an evasion of the federal due process
5    requirements, minimal as they may be. See Peltier v. Wright (9th Cir. 1994)
6    15 F.3d 860, 862, "[W]e are bound by state's construction [of state law]
7    except when it appears that its interpretation is an obvious subterfuge
8    to evade the consideration of a federal issue." See also Oxborrow v.
9    Eikenberry, 877 F.2d 195, 1399 (9th Cir. 1989) ("[D]eference to the [state]
10   Court is suspended only upon finding that the court's interpretation [of
11   state law] is untenable or amounts to a subterfuge to avoid federal review
12   of a constitutional violation.") If the Dannenberg interpretation is so
13   unreviewable, i.e., any facts underlying any murder can stand as "some
14   evidence' to deny parole, then the federal standard of "some evidence'
15   is eviscerated, and the Dannenberg decision deprives California prisoners
16   due process. Interestingly, the California Appellate Court now seems to
17   realize the arbitrary features of the Dannenberg minimum necessary standard,
18   redefining it to require evidence of cruelty with trivial provocation.
19   See In re Weider, (2006) DJDAR 15795, 15801, making this holding, effective
20   noting cruelty is synonymous with the exceptional callousness, i.e. tortuous
21   intent, not present in this case.

22      Continuing with this reasoning, the federal courts judge noted, while
23   Biggs does not explicitly state when reliance on an unchanging factor
24   would violate due process, i.e. when such a factor no longer has predictive
25   value, this determination is made on a case by case basis. Therefore,
26   repeated application of the severity of the crime factor will violate due
27   process when the crime for which incarceration was required grows more
28   remote. (See e.g. Martin v. Marshall, (N.D.Cal.2006) 341 F.Supp.2d 1038,

1042; <u>Rosenrantz v. Marshall</u>, (C.D.Cal.2006) 444 F.Supp.2d 1063.

IV.  THE DEGREE OF THREAT TO SOCIETY POSED BY PETITIONER WAS FIXED BY THE SENTENCING COURT BASED ON THE COMMITMENT OFFENSE AND AN ASSESSMENT OF THE PROPENSITY OF AN OFFENDER.

As noted in Penal Code §3041(B), the state parole authority is to comply with any "sentencing information" relevant to the setting of a parole release date. This includes Judicial Council sentencing information attached to California Rules of Court, Rule 4.421, in the form, of their Advisory Committee comments, which clearly notes that trial court "sentencing decisions must take into account 'the nature and degree of the offense and/or the offender, with particular regard to the degree of danger both present to society.' [Citations]" The Judicial Council then advised that, "For determination of sentences, justice generally requires... that there be taken into account the circumstances of the offense together with the propensities of the offender." (<u>Pennsylvania v. Ashe</u>, (1937) 302 U.S. 51, 55 [58 S.Ct.59], quoted with approval in <u>Gregg v. George</u>, (1976) 428 U.S. 135, 189, [96 S.Ct. 2909, 2932].) Sentencing rules and information guidelines which clearly denote that at sentencing the court determined the degree of threat to society posed by Petitioner equated to second-degree murder, not a more serious crime.

CONCLUSION

"The test is not whether some evidence supports the reasons the [Board or Governor] cites for denying parole, but whether some evidence indicates a [prisoner's] release unreasonably endangers public safety. (Cal.Code Regs., tit. 15, §2402, subd.(a).) (Citations). Some evidence of the existence of a particular factor does not necessarily equate to some evidence the [prisoner's] release unreasonably endangers public

safety." (In re Lee, supra, 49 Cal.Rptr.3d at 936.) In this case the only potentially meaningful (but unsupported) factors declared by the Governor to support finding Petitioner's release would pose an unreasonable risk of danger to society were those relating to the immutable circumstances of his 17 year old offense. California courts are now consistently ruling that the predictive value of the nature of a 10 to 20 year old murder offense is nil when used to determine if the offenders release would pose an unreasonable threat to public safety, especially when accompanied by a positive history after imprisonment. Accordingly, the Governor's reliance on crime factors to deny Petitioner parole is one unsupported by reliable evidence, rendering it arbitrary, requiring his decision to deny parole be vacated, and Petitioner's immediate release ordered.

///

///

///