Michael Scott Jones #E-40401
Correctional Training Facility
P.O. Box 689 (G-319)
Soledad, California 93960-0689

Petitioner, In Pro se

FILED
08 AUG 11 AM 8:02
U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

MICHAEL SCOTT JONES,

Petitioner,

v.

ARNOLD SCHWARZENEGGER,

Respondent.

C07-4323 JSW

TRAVERSE TO RESPONDENT'S ANSWER TO PETITION FOR WRIT OF HABEAS CORPUS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF.

INTRODUCTION

In his Petition for writ of habeas corpus, Petitioner raised numerous legal and factual challenges to Governor Schwarzenegger's, September 28, 2006 reversal of the May 1, 2006, finding of parole suitability by the Board of Parole hearings. In the Return, respondent, by and through counsel offers no reasonably correct nor legally sustainable justification for that action and their arguments in opposition in fact erroneously cites U.S. Supreme Court precedents directly related to the issues argued herein before this Honorable Court and, further, asks this Court to ignore 9th Circuit case law. Therefore, the writ must issue and relief prayed for granted.

**TRAVERSE**

Petitioner, Michael Scott Jones, proceeding pro se, hereby submits this Traverse to Respondent's Return following this Court's Order to Show Cause dated January 8, 2008. Petitioner admits, denies, and alleges as follows:

Petitioner expressly re-alleges each and every factual contention made in his Petition and accompanying Memorandum and Exhibits previously filed before this Court on August 22, 2007.

1. Petitioner admits he is in the custody of the California Department of Corrections and Rehabilitation as a result of 1989 conviction, but denies remains lawful.

2. Petitioner admits that over 18 years ago he was convicted of second-degree with use of a firearm, admits he was responsible for the murder of the victim, offers no mitigation for his acts, admits he then operated under the influence of excessive alcohol use, but denies the accuracy of some reported facts, which do not lessen his admitted responsibility for his illegal actions on May 19, 1989. Acts which now lack value for predicting his future behavior given his positive record of 18+ years since the crime.

3. Petitioner essentially admits the facts as described in Respondent's Paragraph three.

4. Petitioner admits on September 28, 2006, Governor Schwarzenegger reversed the Board's parole suitability finding pursuant to California Penal Code section 4041.2, based on the circumstances of the crime, denies it was carried out as expressly noted, and denies that 18+ years after it occurred, given his positive prison performance, that crime factors provide any reliable evidence supporting the Governor's

decision to reverse the parole grant. Petitioner denies that his 18 year old, pre-offense admitted alcohol abuse can be used as a factor supporting the Govenor's decision to reverse the parole grant given his long term abstinence and AA (12 step) attendance since 1989. (In re Mark Smith (2003) 109 Cal.App.4th 489, 504.)

5. Petitioner admits that he filed his petition in the Ventura County Superior Court, but denies that the Febuary 27, 2007, decision was a reasoned one.

6. Petitioner admits Repondent's allegation in Paragraph six.

7. Petitioner admits Respondent's allegations in Paragraph seven.

8. Petitioner admits Respondent's paragraph 8 allegation that he exhausted his cognizable claims in the state court, and unsure of the meaning of Resondent's appended assertion concerning "encompassed systemic issues," denies that claim.

9. Petitioner denies any implication that he failed to state a federal claim as reliance after 18+ years solely on the crime to deny parole is contrary to the standards endorsed and adopted by the State Crime Court. (In re Singler (2008) 161 Cal.App.4th 281, 298-301.)

10. Petitioner denies the allegations in Paragraph 10.

11. Petitioner denies Respondent's claim that he lacks a liberty interest in parole, and asserts that numerous, if not all, District Courts and the Ninth Circuit have repeatedly held that the wording and requirements of California's Penal Code § 3041(b) provide the State's indererminately sentenced prisoners with a federally protected liberty interest. Contrary to Respondents implied assertion, the decision of In re Dannenberg neither addresses liberty interest, other than affirmatively

supporting it in dicta, nor was Penal Code § 3041(b) the matter before that Court.

12. Petitioner denies Respondent's claim and asserts the evidence clearly shows the State Courts decisions were contrary to clearly established United States Supreme Court decided law and that the Court's decision's were an unreasonable determination of the facts in light of the evidence presented.

13. Petitioner denies his due process is satisfied merely by an opportunity to be heard and d detailed explanation as to why he was denied parole. See e.g. In re Rosenkrantz (2002) 29 Cal.4th 616, requiring some evidence to support the decision, that findings must be as specified in the regulations. See also In re Singler (2005) 161 Cal.App.4th at 298 -382 noting the endorsement in its 2005 order (DJDAR 5850, S150139) the State's Supreme Court's adoption of the standard enacted In re Lee (2006) 143 Cal.App.4th 1400, 1408, requiring the Board and state court to estbalish a nexus between findings and how a prisoner would currently pose an unreasonable threat to public safety if released, etc. A currency requirement the Governor failed to satisfy in his letter reversing parole.

14. Petitioners denies Respondents paragraphs 14, 15, and 16, that the state court reasonably applied the some evidence standard and and could continue in this case to apply static crime factors in the manner done. Holding contrary to Respondent's position, see Hayward v. Marshall (9th Cir. 2008) 512 F.3d 530, 543, relying on In re Lee (2006) 143 Cal.App.4th 1400, 1408; In re Scott (2005) 1333 Cal.App.4th 573, 595; In re Elkins (2006) 144 Cal.App.4th 475, 499, as endorsed by the State Supreme Court (see ante), all defining the minimum parameters as to what constitutes some reliable evidence.

15. Petitioner denies Respondent may act contrary to law as adapted/endorsed, therefore accepted by the State Supreme Court (see ante) and assert state law as decided by its court is binding on federal Courts. (Bradshaw v. Richley (2005) 546 U.S. 74, 76.)

16. Petitioner denies Respondent's paragraph 19 claim.

17. Petitioner admits Respondent's paragraph 20 that there is no procedural bar to this action.

18. Petitioner denies Respondent's paragraph 21 claim that he not entitled to release.

19. Petitioner denies Respondent's paragraph 22 claim that an evidentiary hearing is not required or appropriate.

20. Petitioner denies Respondent's paragraph 23 claim that he failed to state or establish any grounds for federal habeas relief.

21. Petitioner denies Respondent's paragraph 24 claim and except as expressly admitted above, denies generally and specifically each of Respondent's claims.

For the reasons stated herein and in the following Memorandum of Points and Authorities, Petitioner respectfully submits, the Court should grant the writ.

///

///

///

MEMORANDUM OF POINTS AND AUTHORITIES

STANDARD OF REVIEW

Under state and federal due process standards of review, the fact there is "some evidence" a prisoner's commitment crime was both committed and committed a certain way at a certain time does not mean that crime necessarily represents "some evidence' a prisoner's release on parole will pose an unreasonable risk of danger to the public, especially in light of a record showing the appearance of rehabilitation. In other words, the test is not whether "some evidence" supports the Board's or Governor's reasons for parole denial, but whether "some evidence" supports a decision that a prisoner's release will unreasonably endanger public safety, as required by Penal Code § 3041. (See In re Lawrence (2007) 150 Cal.App.4th 1511, 1540-1544.[1]) Further, the facts of a crime must demonstrate more than the minimum necessary to sustain a conviction for a murder offense type and degree, or they will fail to provide "some evidence" supporting parole denial. (In re Rosenkrantz (2002) 29 Cal.4th 616, 683.)

I. PETITIONER HAS A FEDERALLY PROTECTED LIBERTY INTEREST IN PAROLE RELEASE.

It is well established that all indeterminately sentenced prisoners possess a federally protected liberty interest. See McQuillion v. Duncan (9th Cir.2002) 306 F.3d 895, 901-902. Also see Biggs v. Terhune (9th Cir.

[1] Petitioner is aware of the State Supreme Court granted review In re Lawrence, Case no.S154018, on September 19, 2007, to answer questions, "to what extent should the Board of Parole Hearings, under Penal Code section 3041,...consider the prisoner's current dangerousness, and at what point, if any, is the graivity of commitment offense and prior criminality insufficient to deny parole when prisoner appears otherwise rehabilitated." However, Petitioner also notes for the Court's consideration that the same Supreme Court lifted the stay, releasing petitioner Lawrence. A standard of review noted in In re Lee (2006) 143 Cal.App.4th 1400, 1408 [review denied], In re Elkins (2006) 144 Cal.App.4th 475, 498; In re Wieder (2006) 145 Cal.App.4th 570, 584 , etc. In fact, the State Supreme Court itself has granted review, or an O.S.C., and sent cases back to lower courts, instructing they determine "why [that] Petitioner remains a danger to public safety," citing In re Lee 140 Cal.App.4th 1400 at 1408 in those orders. See e.g. In re Ronald Singler (2007) DJDAR 5850, Case No. S150139.

2003) 334 F.3d. 910, 914-915, relying on Greenholtz v. Inmates of Nebraska (1979) 441 U.S. 1 and Board of Pardons V. Allen (1987) 482 U.S. 369, 377-378, to clearly reason that the similar structure and phrasing of California's parole statute (Penal Code 3041, subd. (b)) when compared to those of Nebraska and Montana produce the same result in this state - a federally protected liberty interest. A liberty interest, the Biggs court held on pp. 914-915, to arise "upon the incarceration of the inmate." As held by Sass v. California Parole Board 461 F.3d at 1127-1128, the State decision in In re Dannenberg (2005) 34 Cal.4th 1061, is limited to the Uniform term provision of Penal Code section 3041, subd. (a), and has no bearing on the Ninth Circuit holding that the mandatory langauge of Penal Code § 3041, sub-section (b) creates a liberty interest in parole. Accordingly, a Board or Governor's decision to deny parole must be supported by some relevant and reliable evidence.

## II. DENIAL OF PAROLE BASED ON THE IMMUTABLE CIRCUMSTANCES OF THE COMMITMENT OFFENSE AFTER 18 YEARS DEPRIVES THIS PETITIONER OF DUE PROCESS.

State and federal courts are now repeatedly holding that even if offense circumstances are considered under regulatory law to support parole denial, due process may preclude the crime (and prior history) alone justifying repeated parole denials, after the passage of a lengthy period of years, given a positive prison program and an appearance of rehabilitation. (See e.g. Irons v. Carey (9th Cir. 2007) 479 F.3d 658, 662; In re Scott (2005) 34 Cal.Rptr.3d 905, 919-920; In re Lee (2006) 143 Cal.App.4th 1400, 1408-1409; In re Elkins (2006) 144 Cal.App.4th 475, 498; Rosenkrantz v. Marshall (C.D.Cal 2006) 444 F.Supp.2d 1063.)

Disregarding this standard, the Governor denied Petitioner parole based on the unchanging factors of his offense. A finding that ignores or improperly discounts Petitioner having since remained free of crime,

his post-offense lack of alcohol or substance use, his then 18 years of disciplinary free behavior while in CDCR custody, his highly positive prison work record, his self-help programming record, his acceptance of responsibility, his more than adequate parole plans, and repeatedly stated remorse for the resulting loss of life.

Assessing a similar chronological situation, for a first-degree murder and associated crime legally more serious than Petitioner's offense, a federal district court judge reasoned that:

> "Whether the facts of the crime of conviction, or other unchanged criteria, affect the parole eligible decision can only be predicated on the "predictive value" of the unchanged circumstance. Otherwise, if the unchanged circumstances per se can be used to deny parole eligibility. Sentencing is taken out of the hands of the judge and totally reposited in the hands of the BPT. That is, parole eligibility could be indefinitely and forever be delayed based on the nature of the crime even though the sentence given set forth a possibility of parole - a sentence given with the facts of the crime fresh in the mind of the judge. While it would be a constitutional violation to forgo parole altogether for certain crimes, what the state cannot do is have a sham system where the judge promises the possibility of parole , but because of the nature of the crime, the BPT effectively deletes such from the system. Nor can a parole system, where parole is mandated to be determined on someone's future potential to harm the community, constitutionality exist despite 20 or more years of prison life which indicates the absence of danger to the community in the future, [due to] the unchanged circumstances indicate a present danger to the community if released, and this can only be assessed not in a vacumm, but counterpoised against a background of prison events." (Relying on Bair v. Folsom State Prison 2005 WL 2219220 * 12, n.3 (E.D.Cal. 2005) report and recommendation adopted by WL 3081634 (E.D. Cal. 2005.)

Similarly analyzing the Board's continuing to rely on crime factors and a prior criminal history many years after the offense as an indicator of present dangerousness, when a prisoner has positively programmed and been free of violence, criminal acts, alcohol or drug use, and disciplinary infractions for many years, state courts have found the ability to predict their future dangerousness based on the circumstances of a commitment offense becomes nil. See e.g. In re Scott, supra, 133 Cal.App.4th at 595,

34 Cal.3d 905:

> "The commitment offense can negate suitability only if the circumstances of the crime reliably establish by evidence in the record rationally indicates that the offender will present an unreasonable public safety risk if released from prison. Yet, the predictive value of the commitment offense may be very questionable after a long period of time." (Id., at 920) "Therefore an unsuitability determination must be predicated on 'some evidence' that the particular circumstances of [the prisoner's] crime - circumstances beyond the minimum elements of this conviction - indicate exceptional callousness and cruelty with trivial provocation, and thus suggest he remain a danger to public safety." (In re Dannenberg, supra, 34 Cal.4th at 1098.)" (Id., at 922.)

Clearly, after 18 years, Petitioner's post-imprisonment behavior, work record, and self-help record provides absolutely no reliable evidence of his re-offending, while the lengthy period of years that has passed since the offense occurred has rendered nil the predictive value of its circumstances, rendering the Governor's decision to reverse the Board's parole grant arbitrary. (See In re Lee, supra, 143 Cal.App.4th at 1408.)[2]

**III. A PAROLE REVERSAL DECISION BASED ON THE FACTS OF A CRIME WHICH ARE NO MORE THAN THE MINIMUM NECESSARY TO SUSTAIN THAT CONVICTION IS CONTRARY TO DUE PROCESS.**

To apply the "some evidence" standard, a reviewing court must ask the question. "some evidence of what?" The question is answered by the state's parole determination statute: the offense facts must demonstrate that the "timing" or "gravity" of the community offense renders the inmate's parole a current public safety risk, as every prospective parolee was dangerous when he or she committed their offense. (Penal Code §3041 (b).) However, the Governor in this case stated nothing as to why, or what it is about, the timing and gravity of Petitioner's offense acts that makes him a current parole risk to public safety? Intentionally or

[2] The State Supreme Court has recently instructed the Los Angeles Superior Court to apply the standard of Lee at p. 1408 in In re Masoner, 2007 DJDAR 12436, a similarly old offense. In Case No. BH 004852, the Los Angeles Superior Court granted that writ.

otherwise, they failed to establish that necessary nexus. Accordingly, since Petitioner understands the underlying causes of his crime and has made the necessary changes, as indicated by the positive nature of the 18 years, there is no evidence indicating he would be a current parole risk.

Failing to recognize the above, and neglecting to demonstrate the necessary nexus, the Governor improperly reversed Petitioner's parole grant.

**IV. ABUSE OF THE "MINIMALLY NECESSARY STANDARD DEPRIVES APPEARING PRISONERS OF THEIR FEDERALLY PROTECTED LIBERTY INTEREST BY EVISCERATING THE "SOME EVIDENCE" STANDARD.**

Since California's parole scheme gives rise to a cognizable liberty interest in release on parole (Biggs v. Terhune, supra, 914-915) the requirements of due process require "some evidence" which has an indicia of reliability to support the parole decision. (Ibid.) As a federal district court judge reasoned, Biggs was serving a sentence of twenty-five to life following a sentence of a 1985 first-degree murder conviction. He challenged the 1999 Board decision finding him unsuitable for parole despite his record as a model prisoner. (Id., at 913.) The court upheld the use of his commitment offense in that case as it involved the murder of a witness, finding the murder was perpetrated by beating the victim to death using multiple blows from a baseball bat, that it was carried out in a manner exhibiting a callous disregard for the life and suffering of another, and that petitioner Biggs could benefit from therpy. (Ibid.) However, even though the murder was carried out to silence a witness, the Biggs court cautioned that "a continued reliance in the future on an unchanging factor, the circumstances of the offense and conduct prior to imprisonment, runs contrary to the rehabilitaive goals espoused by the prison system and could result in a due process violation." (Id., at 917.) A standard denoting

that the parole board should determine who will be a danger to the community by looking at the commitment offense in terms of its predictive value. Therefore, aside from punishment the parole executive's role is to determine when these presumptions have been confirmed or rebutted. While the Biggs court appears to agree with In re Rosenkratnz (2002) Cal.4th 616, 683, stating that in order for the Board to put weight on th exceptional nature of the crime, it had to be "particularly egregious," and while the crime in this case, as in In re Dannenberg (2005) 34 Cal.4th 1061, was particularly egregious, after a sufficient period of years, in this case now 29 years, with a prison record such as Petitioner's, the passage of time removes the evidentiary value presented by the predictive value of his crime. Thereafter, the crime can no longer provide reliable evidence showing this prisoner is currently a threat to public safety. See In re Lee at 1408. Similarly see, In re Elkins 144 Cal.App.4th 498, where the court found that after 20 years the predictive value of the immutable facts of another, and vicious, first-degree, murder offense than the in this case, was very questuonable. (Id. at 520.) Elkins intended to, and did, rob a sleeping victim. However, each time the victim awoke or recovered consciousness during the robbery, petitioner Elkins used a baseball bat to repeatedly strike the victim in the head. As the victim kept moving, Elkins kept hitting him. (Id. at 518.) Elkins then took the victim's money, wallet, and drugs. (Id. at 520.) The next morning Elkins drove the body to Donner's Pass and dumped it down a steep grade. He also stole other items from the victim's property and fled the state. (Id. at 520.) The court found for first-degree murders (of that nature), that after 20+ years the predictive value of these [very egregious] acts were nil (Id. at 521), given the low probability of that petitioner re-offending. This Petitioner's post-imprisonment record is at least as satisfactory as that of Elkins,

therefore, his 18 years of imprisonment, and disciplinary free behavior while in CDCR custody is similar to the situation in In re Lee, supra, 143 Cal.App.4th at 1408, 1412, an offense involving multiple victims.

As a federal court judge noted, while Biggs does not explicitly state when reliance on an unchanging factor would violate due process, i.e. when such a factor no longer has predictive value, this determination is made on a case by case basis. Therefore, application of the severity of the crime factor would violate due process when the crime for which incarceration was required grows more remote. (See e.g. Rosenkrantz v. Marshall (C.D. 2006) 444 F.Suppp.2d 1063; In re Lee, supra, at 1408.) Accordingly, reversing the parole grant in this case was an unreasonable conclusion as no evidence supports a finding that Petitioner is currently, i.e. "remains," A threat to public safety as required by In re Dannenberg at 1098. Also see In re Lee 143 Cal.App.4th at 1408; In re Scott 133 Cal.App4th at 595.

## CONCLUSION

"The test is not whether some evidence supports the reasons the [Board or Governor] cites for denying parole, but whether some evidence indicates a [prisoner's] release unreasonably endangers public safety. (Cal.Code Regs., tit. 15, §2402, subd.(a).) (Citations). Some evidence of the existence of a particular factor does not necessarily equate to some evidence the [prisoner's] release unreasonably endanger public safety." (In re Lee, supra, 49 Cal.Rptr.3d at 936.) in this case the only potentially meaningful (but unsupported) factors declared by the Governor to support finding Petitioner's release would pose am unreasonable risk of danger to society were those relating to the immutable circumstances of his 18 year old offense. California courts are now consistently ruling that the

predictive value of the nature of 10 to 20 year old murder offense is nil when used to determine if the offenders release would pose an unreasonable threat to public safety, especially when accompanied by a positive history after imprisonment. Accordingly, the Governor's reliance on crime factors to deny Petitioner parole is one unsupported by reliable evidence, rendering it arbitrary, requiring his decision to deny parole be vacated, and Petitioner's immediate release ordered.

Dated: July 31, 2008

Respectfully submitted,

Mike Jones

Michael Scott Jones
Petitioner, In Pro se

**PROOF OF SERVICE BY MAIL**

(C.C.P. §§1013A, 2015.5)

STATE OF CALIFORNIA ) Michael Scoot Jones, Petitioner
) SS.
COUNTY OF MONTEREY ) Arnold Schwarzenegger, Respondent

I, Lance Van Hook, am a resident of the State of California, County of Monterey. I am over the age of 18 years and I ~~am~~/am not a party to the within action. My business/residence address is P.O. Box 689, Soledad, California, 93960-0689.

On August 1, 20 08, I served the foregoing: TRAVERSE TO RESPONDENT'S ANSWER TO ORDER PETITION FOR WRIT OF HABEAS CORPUS: MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF.

on the parties listed below by placing a true copy thereof enclosed in a sealed envelope with postage fully prepaid in the United States mail at Soledad, California, addressed as follows:

Department of Justice
office of Attorney General
455 Golden Gate Avenue, Suite 11000
San Francisco, CA 94102-3664

There is regular delivery service by the U.S. Postal Service between the place of mailing and the places so addressed.

I declare under the penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed this 1st day of August, 20 08, at Soledad, California.

/S/ [signature]